STATE OF HAWAII, Plaintiff–Appellee, v. DARRYL ANDREW FOX, Defendant–Appellant

NO. 12245

(CR. NO. 86–189)

SEPTEMBER 1, 1988

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

## OPINION OF THE COURT BY NAKAMURA, J.

Following a jury trial in the Circuit Court of the Third Circuit, Darryl Fox was adjudged guilty of Terroristic Threatening in the First Degree. The dispositive questions in his appeal from the judgment of conviction are whether inadmissible evidence of plea discussions was admitted in error and if it was, whether this constituted plain error. Concluding from a review of the record that plain error was committed, we vacate the judgment and remand the case for a new trial.

I.

An indictment was filed in the circuit court on May 27, 1986, charging that on November 15, 1985, Darryl Fox "threaten[ed] . . . to cause bodily injury to CHARLES CARSTEN with intent to terrorize . . . CHARLES CARSTEN with the use of a dangerous instrument, to wit: a firearm, thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Sections 707–715(1) and 707–716(1)(d), Hawaii Revised Statutes . . . ." The alleged offense occurred when the defendant, while walking through the parking lot of a supermarket in Kona, saw an acquaintance, Carsten, and called him, but by another name. When Carsten did not answer, the defendant slapped him on the shoulder. This caused Carsten, who was walking with the aid of a cane, to lose his balance and swing an arm out. As a consequence, the cane struck the defendant's forehead.

As the defendant staggered from the blow, what Carsten later described as a cocked and loaded Deringer with white grips fell from the defendant's waistband. According to Carsten, the defendant then picked the gun up, pointed it at Carsten's head, and said: "Why did you fuckin' hit me? . . . I wish I could blow your brain out . . . . I want to blow you away." The incident was witnessed by a woman who reported it to police. The defendant fled the scene before the police arrived. When apprehended later, the defendant had no weapon on his person. He denied he had a gun during the encounter, and his explanation of what happened was: "The fucker hit me with a cane. I don't have a gun. The fucker hit me, so I grabbed him by the face and told him not to fuck with me."

The defendant was served with a copy of the indictment on July 6, 1986, and a deputy public defender was appointed to defend him on July

29, 1986. Early in September, the deputy prosecuting attorney assigned to prosecute the defendant apprised defense counsel that enough evidence had been uncovered to charge Darryl Fox with yet another crime, Theft in the First Degree, for failing to return rented personal property. Counsel was advised that the State would not prosecute Darryl Fox for this offense if he pleaded guilty to the pending indictment. The offer of a plea agreement was not accepted because the defendant insisted there was no gun involved in the encounter between Carsten and himself. Carsten, the defendant had told counsel, could easily have thought there was a gun in his hand because he had a black bandanna wrapped around his hand. Counsel repeated this to the prosecutor.

Several weeks later, the offer was put in writing; the letter from the prosecutor dated September 23, 1986 stated:

As we discussed some time ago, the State has offered not to prosecute your client for Failure to Return Rental Property or Theft 1st in connection with report no. C–42699/KN involving Scott's Video in Keauhou. In exchange, your client is to plead to Terroristic Threatening in the First Degree.

Counsel was further advised the offer would expire on September 29, 1986, when the case was to be called for setting. At the calendar call, the trial court was informed that the defendant would proceed to trial. The prosecutor also agreed to extend her offer to October 6, 1986.

During the first week in October, Darryl Fox and his father admitted to counsel that the defendant had what looked like a pistol when he met Carsten. What he actually had, they said, was a toy pistol, a replica of a Deringer. Since counsel had "stipulated and agreed" with the prosecutor on September 26, 1986 to "disclose the nature of any defense which counsel intend[ed] to use at trial[,]" she passed this information on to the prosecutor.

When the case was tried in January of 1987, the defendant called his father as a witness. The father testified he received a cap pistol from his father in 1957. He described the pistol as an almost perfect replica of a Deringer, only too light to be an authentic firearm. The defendant's mother, he said, took the pistol when they separated some years ago. This was confirmed by the defendant's mother when she testified. Her friend also testified as a defense witness, and said he saw the cap pistol once while cleaning the defendant's room. The mother's friend reiterated what the father said about the weight of the pistol.

The defendant took the stand in his own defense and claimed he was carrying a cap pistol when he met Carsten because he had been harassed and assaulted on prior occasions. In anticipation of cross-examination on this point, counsel asked defendant why he told the police he had no gun. The defendant replied he was "scared" when he was apprehended. But as counsel anticipated, the prosecutor cross-examined defendant at length on the matter. Among other things, she asked him about the bandanna in his hand that Carsten could have believed was a gun. When the defendant admitted telling counsel this, the prosecutor followed up by asking him whether "it [wasn't] true that this toy gun theory was something that just came about months after you had been arrested[.]"

Counsel objected to the question, but failed to state why it was objectionable. Her objection was: "I'm not sure whether the Prosecutor is correctly stating the case." The objection was overruled, the defendant was subjected to further cross-examination on the bandanna and the toy gun, and he admitted telling his "mother and everybody" about the toy gun right away, but not counsel.

The jury instructions requested by the State at the close of evidence included one covering the "false and misleading statements" made by the defendant at trial. Counsel for the defendant questioned whether it was apt in the circumstances, stating: "I was very surprised when [the prosecutor] brought that up [at trial] because I thought that statements made— kind of negotiations or something weren't supposed to be brought up." The trial court did not respond, and counsel did not pursue the matter.

After the jury returned a guilty verdict, defendant moved for a new trial or a judgment of acquittal. He expressly raised the impropriety of admitting statements made in the course of plea discussions. The State countered with an argument that the statements in question were disclosed to the prosecutor pursuant to the agreement of counsel to disclose the nature of any defense the defendant would rely on at trial. The motion was denied, and the defendant's appeal to this court followed.

## II.

We begin our consideration of the issues posed by the appeal with a brief discussion of plea agreements and their place in our system of criminal justice.

## A.

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260 (1971) (quoted with approval in *State v. Yoon*, 66 Haw. 342, 346, 662 P.2d 1112, 1115 (1983)). Thus, the intent of Rule 410 of the Federal Rules of Evidence and its Hawaii counterpart, Rule 410 of the Hawaii Rules of Evidence, is "the promotion of disposition of criminal cases by compromise." Advisory Committee's Note to Fed. R. Evid. 410; Haw R. Evid. 410 Commentary.

We have yet to apply Haw. R. Evid. 410 in the setting at hand. But like its federal prototype, the Hawaii rule is a creature of legislation; it is codified in Hawaii Revised Statutes (HRS) § 626–1 (1985). Thus, the search for meaning must begin with the words of the rule which, in relevant part, reads:

> **Inadmissibility of pleas, plea discussions, and related statements.** Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> . . . .
>
> (4) Any statements made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty . . . .

The rule on its face renders inadmissible against a defendant who was a *participant*, "statements made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty." The pertinent queries, then, are whether the statements in question were made in the course of such discussions and whether the defendant was a participant therein.

## B.

On September 23, 1986, the attorney for the prosecuting authority confirmed in writing that she and defense counsel "discussed some time ago" the State's offer not to prosecute Darryl Fox for another offense if he

would "plead to Terroristic Threatening in the First Degree." The offer, she stated, would expire on September 29, 1986. In rejecting the plea bargain shortly after its proffer, counsel reiterated what the defendant told her, that he had no gun and Carsten might have thought he had one because of the black bandanna.

We have no doubt that these statements were made in the course of plea discussions—there was no reason otherwise for counsel to repeat the defendant's statements to the prosecutor. They were not, as the State would have us believe, disclosures made pursuant to the agreement of defense counsel to reveal any defense to be raised at trial. That they were is belied by the fact that the Stipulation for Disclosure of Defense was signed by counsel on September 26, 1986, after the State filed a motion seeking disclosure under Rule 16(c)(3) of the Hawaii Rules of Penal Procedure (HRPP). Counsel disclosed the "toy gun" defense, as she had agreed to, when she was told in October about the toy that looked like a real gun. The statements in question, however, were repeated to the prosecutor early in September.

We have no doubt too that the defendant was a "participant" in the plea discussions initiated by an attorney for the prosecuting authority. The offer not to prosecute Darryl Fox for Theft in exchange for a plea to Terroristic Threatening was, of course, directed to him. Since he was already under indictment and the circuit court had appointed an attorney to defend him, the prosecuting attorney could not speak directly to him. And since appointed counsel responded in his stead to an offer of a plea bargain, Darryl Fox unquestionably was a participant in the plea discussions.

## C.

The State, however, argues "[n]ot every discussion between an accused and government agents is a plea negotiation that is inadmissible." It urges the adoption of "[a] two–tiered analysis articulated in *United States v. Herman*, 544 F.2d 791 (5th Cir. 1977)[,] and adopted in other jurisdictions, [which requires consideration of] (1) whether the accused exhibited an actual, subjective expectation to negotiate a plea at the time the statement was made, and (2) whether the expectation was reasonable given the totality of objective circumstances." The defendant's "asserted subjective belief" that the statements were made in the course of plea negotiations, the State maintains, is unreasonable when viewed in the light of all

the objective circumstances. But the plain wording of Haw. R. Evid. 410(4) and the circumstances render this two–tiered analysis inappropriate here.

The defendant in *United States v. Herman* was arrested in Georgia on a warrant charging him with the killing of a postal employee in Florida. During a recess in a removal hearing before a federal district court in Georgia, he initiated a conversation with the two postal inspectors who had transported him from the county jail to the federal courthouse in Columbus, Georgia. He told them he was not guilty of murder and blamed an alleged accomplice. At one point, however, "he said he would plead guilty to robbery charges and produce the gun if authorities would agree to drop the murder charges." *United States v. Herman*, 544 F.2d at 793.

After he was indicted, Herman moved to suppress the statements he made to the two postal inspectors on grounds that his "Miranda" rights were violated and the statements were made in connection with an offer to plead guilty. The district court excluded the statements as plea–related. The Government appealed, arguing "that Herman's statements could not have been plea–related because the postal inspectors had no authority to negotiate a plea." *Id.* at 798. The United States Court of Appeals for the Fifth Circuit rejected the argument and affirmed the ruling of the district court, applying a subjective test in deciding that evidence of a plea offer made by the defendant to postal inspectors was inadmissible, notwithstanding the lack of authority on their part to negotiate plea agreements.

When the ruling was rendered, Fed. R. Evid. 410, in relevant part, read:

> Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or of a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

Rule 11(e)(6) of the Federal Rules of Criminal Procedure (Fed. R. Crim. P.) contained similar provisions.[1] Since the language of both rules sim-

---

[1] Rule 11(e)(4) of the Hawaii Rules of Penal Procedure is worded as Fed. R. Crim. P. 11(e)(6) was; in relevant part, it reads:

ply rendered statements made in connection with, and relevant to plea bargains or offers thereof inadmissible, the analysis articulated in *Herman* served a salutary purpose in determining what statements should be deemed inadmissible. But, by reason of the revision of Fed. R. Evid. 410(4) and Fed. R. Crim. P. 11(e)(6) in 1979 and the enactment of the Hawaii Rules of Evidence in 1980, reliance on *Herman* as a guide here would be misplaced. *See, e.g., United States v. Davidson*, 768 F.2d 1266, 1270 (11th Cir. 1985) ( *Herman* "is no longer viable" as precedent in the application of Fed. R. Crim. P. 11(e)(6)); *United States v. Keith*, 764 F.2d 263, 265 (5th Cir. 1985) (incriminating admissions made to law enforcement agents, but not to prosecuting attorney, were not inadmissible statements made in the course of plea discussions).

Fed R. Evid. 410(4), as amended, and Haw. R. Evid. 410(4) differ from the federal evidence rule as it read before its amendment and HRPP 11(e)(4) in two salient respects. The pertinent rule of evidence now renders inadmissible those "statements made in the course of plea discussions with an attorney for the prosecuting authority . . . ." Haw. R. Evid. 410(4). And the statements are inadmissible against a defendant who participated in the discussions rather than only "against the person who made the plea or offer." HRPP 11(e)(4). Darryl Fox was a participant in plea discussions with an attorney for the prosecuting authority. Hence, the evi-

---

(4) *Inadmissibility of Plea Discussions.* Except as otherwise provided in this paragraph, evidence of a plea of guilty, later withdrawn, or of a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the offense charged or any other offense, or of statements made in connection with, and relevant to, any of the foregoing pleas or offers, is not admissible in any civil or penal proceeding against the person who made the plea or offer.

HRPP 11(e)(4) has not been amended since it was promulgated by this court in 1976. To the extent that it is inconsistent with Haw. R. Evid. 410(4), however, it has no effect. The Hawaii Rules of Evidence, which are set forth in HRS § 626–1, were enacted in 1980 and became effective on January 1, 1981. See HRS § 626–2. By virtue of HRS § 626–3, a rule of evidence codified in HRS chapter 626 prevails over an inconsistent procedural rule promulgated by this court, unless chapter 626 or the procedural rule "specifically provides otherwise."

dence in question was inadmissible, though he neither offered to plead nor pleaded guilty to Terroristic Threatening.

## D.

When the prosecutor questioned the defendant about the bandanna and Carsten's mistaken belief, defense counsel objected, but she did not apprise the trial court that this was improper cross-examination because it was based on statements made in the course of plea discussions. Fairness to the trial court impels a recitation in full of the grounds supporting an objection to the introduction of inadmissible matters. *S & W Crane Serv., Inc. v. Berard*, 53 Haw. 161, 164, 489 P.2d 419, 421 (1971) (citations omitted). Otherwise, the court would be denied the opportunity to give the objection adequate consideration and rule correctly. The statutory provisions governing appeals in criminal cases thus prevent our consideration, save in exceptional circumstances, of alleged errors that were not called to the attention of the trial court when committed. The provision setting forth the prerequisite of a timely objection to the admission of evidence is found in HRS § 641–16; it reads:

> Except as otherwise provided by the rules of court, there shall be no reversal for any alleged error in the admission or rejection of evidence or the giving of or refusing to give an instruction to the jury unless such alleged error was made the subject of an objection noted at the time it was committed or brought to the attention of the court in another appropriate manner.

But where plain errors were committed and substantial rights were affected thereby, the errors "may be noticed although they were not brought to the attention of the [trial] court." HRPP 52(b). And we may notice "plain error" even when "not presented" by the appellant. Hawaii Rules of Appellate Procedure (HRAP) 28(b)(4). Our task, then, is to determine whether the admission of evidence obtained in the course of plea discussions was plain error or not.

## III.

"The plain error rule is a departure from the position usually presupposed by the adversary system that a party must look to his counsel to protect him and that he must bear the cost of the mistakes of his counsel."

3A Wright, *Federal Practice and Procedure: Criminal 2d* § 856 (1982) (footnote omitted). The primary components of the rule were delineated by Justice Harlan Fiske Stone half a century ago when he wrote:

> In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.

*United States v. Atkinson*, 297 U.S. 157, 160 (1936) (citations omitted). Our prior expressions of an appellate court's power to notice plain error in criminal cases have been even more succinct. We have said little more in this regard than HRPP 52(b) itself, that is: appellate courts "have the power, *sua sponte*, to notice plain errors or defects in the record affecting substantial rights [though they were] not properly brought to the attention of the trial judge or raised on appeal." *State v. Iaukea*, 56 Haw. 343, 355, 537 P.2d 724, 733 (1975) (citations omitted); *see also State v. Brezee*, 66 Haw. 162, 166, 657 P.2d 1044, 1047 (1983); *State v. Onishi*, 59 Haw. 384, 385, 581 P.2d 763, 765 (1978); *cf. State v. Kahalewai*, 56 Haw. 481, 491, 541 P.2d 1020, 1027 (1975) (Plain error may be noticed when "required to serve the ends of justice or to prevent the denial of fundamental rights[.]"); *State v. Ruiz*, 49 Haw. 504, 507, 421 P.2d 305, 308 (1966) (Plain error may be noticed where the "error disclosed by the record is fundamental.").[2]

We have not endeavored to place a gloss on the rule, as other courts have, "by [further] defining the kind of error for which [we would] reverse under Rule 52(b)." 3A Wright, *supra*. In our view, the decision to take notice of plain error must turn on the facts of the particular case to correct errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. at

---

[2] In civil cases, the plain error rule is only invoked when "justice so requires." *Bertelmann v. Taas Assoc.*, 69 Haw. ____, ____, 735 P.2d 930, 935 (1987). We have taken three factors into account in deciding whether our discretionary power to notice plain error ought to be exercised in civil cases: (1) whether consideration of the issue not raised at trial requires additional facts; (2) whether its resolution will affect the integrity of the trial court's findings of fact; and (3) whether the issue is of great public import. *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 476, 540 P.2d 978, 985 (1975); *Fujioka v. Kam*, 55 Haw. 7, 9, 514 P.2d 568, 570 (1973).

160. Though mindful that this power to deal with error is one to be exercised sparingly and with caution because the rule represents a departure from a presupposition of the adversary system, 3A Wright, *supra*, we are convinced the case at bar calls for its invocation.

Given the proscriptions of Haw. R. Evid 410(4), it follows that the admission of evidence grounded on statements made in the course of plea discussions was clearly error. This, in our opinion, seriously affected the fairness of the proceedings. The statements were originally made by the defendant to his lawyer; she repeated them to the prosecutor in responding to an offer of a plea agreement. Were we to approve their use to discredit the defendant's testimony in court, we would not be furthering the purpose of Haw. R. Evid. 410 to promote the disposition of criminal cases by compromise. We would be standing idly by though clear error affecting substantial rights of the defendant was committed. Under the circumstances, an invocation of the plain error rule would be the better part of discretion.

The judgment of conviction is vacated, and the case is remanded for a new trial.

*Daniel Pagliarini (Susan Barr* on the brief), Deputy Public Defenders, for appellant.

*Dale Yamada Ross*, Deputy Prosecuting Attorney, for appellee.