60 P.3d 333

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Gary FARIA, Defendant–Appellant.**

**No. 24035.**

Supreme Court of Hawai'i.

Dec. 30, 2002.

Lyle S. Hosoda, Honolulu, Raina P.B. Mead, and Shelley Tamekazu, on the briefs, for defendant-appellant.

Donn Fudo, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

MOON, C.J., and LEVINSON, J.; NAKAYAMA, J., concurring and dissenting; RAMIL, J. concurring in part and dissenting in part; ACOBA, J., concurring in part with RAMIL, J. and dissenting to the decision of MOON, C.J.

### Opinion by MOON, C.J.

Defendant-appellant Gary Faria appeals from the January 11, 2001 judgment of conviction and sentence of the Circuit Court of the First Circuit, the Honorable Gerald H. Kibe presiding, adjudging him guilty of Unauthorized Entry into Motor Vehicle (UEMV), in violation of Hawai'i Revised Statutes (HRS) § 708–836.5 (2000), which states in pertinent part:

> [a] person commits the offense of unauthorized entry into motor vehicle if the person intentionally or knowingly enters or remains unlawfully in a motor vehicle with the intent to commit a crime against a person or against property rights.

On appeal, Faria contends that the trial court abused its discretion when it: (1) failed to give a jury instruction on what constitutes an unlawful "entry" into a motor vehicle; (2) gave a jury instruction on assault in the third degree where assault was not set forth in the indictment nor disclosed before or during the trial; and (3) refused to allow testimony by Honolulu Police Department Officer Cary Okimoto during cross-examination regarding his opinion on the intent of the legislature in enacting the UEMV law. We agree with Faria's first contention that the trial court erred in failing to give a jury instruction on what constitutes "entry," but disagree with his remaining contentions on appeal. We, therefore, vacate Faria's conviction and sentence and remand this case for new trial consistent with this opinion.

### I. BACKGROUND

At the time of the incident in February 2000, Faria resided with his wife, Candace Faria (Mrs. Faria), and his two step-daughters, Korey and Kelly, in Kapolei, Hawai'i. Faria was a former Honolulu police officer, having worked for twenty-eight years before retiring in December 1998. Faria was subsequently employed as a reserve police officer and a deputy sheriff with the Department of Public Safety.

On February 17, 2000, Mrs. Faria got into an argument with her daughter Korey at the Faria residence. Mrs. Faria asked Korey to leave because she believed Korey was continuing to lie about where she had been going and what she had been doing. Korey agreed to leave, and Mrs. Faria asked her husband to see whether anyone was outside the house waiting to pick up Korey. Faria went outside and observed a car parked just down the road from his house with three individuals sitting inside the vehicle. Faria suspected that they were waiting for Korey. Faria returned to the house, picked up a soda can and a can of mace, and went back outside towards the vehicle. Although Faria did not recognize the two male individuals occupying the front seats of the vehicle, he recognized the female passenger, seated in the middle of the back seat, to be Korey's friend, Christi Gray.

Faria approached the driver's side of the car and attempted to speak with the individuals in the car, but they did not respond and did not make eye contact with him. In a

taped interview with Officer Okimoto, Faria related that the driver's side window was open. At trial, Faria testified that he was a minimum of three feet away from the vehicle at that time. The occupant in the front passenger seat, Dwayne Graham, testified that Faria was four or five inches away from the vehicle. The occupant in the driver's seat, Melvin Lyons, testified that Faria was twelve to eighteen inches away from the vehicle.

Faria asked the occupants several questions and became angry because the occupants refused to respond. In frustration, Faria yelled profanities at the occupants and threw his soda can behind the car. Faria then sprayed the occupants of the vehicle several times with the mace. Lyons testified that: (1) he was sprayed with mace in his face; (2) the whole side of his face was burning; and (3) it was painful. Graham testified that: (1) he saw Faria spraying; (2) he was sprayed in his eyes and on the left side of his face; and (3) he felt a burning sensation and had difficulty breathing.

There is conflicting testimony as to whether Faria's hand entered the vehicle at the time he sprayed the mace. Faria testified that no part of his body entered the vehicle. Gray stated that she did not know if Faria's hand entered the car because she had ducked when he first sprayed the mace into the car. Graham testified that he saw Faria's hand enter approximately "elbow length" into the car. Graham further stated that Faria's "arm was in the vehicle when I got sprayed because I clearly saw his hand ... his hand came across, came across the front seat and he had got me." Lyons also testified that he saw Faria's arm in the vehicle.

Officer Okimoto testified that he was responsible for investigating the February 17, 2000 incident. He also testified that, at the time of his investigation, he looked at the law on UEMV. However, Officer Okimoto stated that the prosecutor's office made the decision with regard to the specific charge against Faria and that he did not have a role in that decision.

During cross-examination by defense counsel, Officer Okimoto was asked: "Have you ever been involved in an investigation of an Unlawful Entry into Motor Vehicle before where somebody's person did not enter the vehicle?" The prosecution objected on the ground that the question did not tend to make the existence of a fact that is of consequence to the determination of the action more or less probable. Defense counsel argued:

> First, it is, and I alluded to it this morning at pretrial, but it is one of our major defenses with respect to the legislative intent on this particular crime. And this detective testified that he was the lead detective and he was responsible for the entire investigation. I think that I'm entitled to get into what his background and experience and knowledge is with respect to the intent of the law because, as I've indicated in pretrial, the legislators moved this from a misdemeanor to a Class C felony as a result of the multiple automobile thefts occurring to tourists, and it doesn't fit this fact scenario.

The trial court sustained the objection, stating:

> The officer was not called by the state to express any opinions regarding the validity of the charges being brought. This was a case that was placed before the grand jury by the prosecutor's office, indictment was returned,[1] and it's the prosecutor's office's call ultimately whether or not to take the matter forward should there be probable cause to do so. There's no indication that it was this officer's determination that this case be brought forward at any point along the line.... This witness was not the appropriate means by which such information should be conveyed to the jury, and so on that basis the Court rendered its decision as to the relevance of the line of questioning being pursued by the defense.

Accordingly, Officer Okimoto's opinion testimony on the UEMV law was not allowed into evidence.

During the settling of jury instructions, the prosecution's Instruction No. 1 was modified without objections by either party. In-

1. Faria was indicted for UEMV on June 21, 2000.

struction No. 1 stated that "[a] person commits the offense of Unauthorized Entry into Motor Vehicle if he intentionally or knowingly enters unlawfully a motor vehicle, with intent to commit therein a crime against a person."

The prosecution also submitted proposed supplemental jury instructions on assault in the third degree and its material elements. Supplemental Instruction No. 1 (Supp. Instr.1), as modified by the court, stated:

> Assault in the Third Degree is a crime against a person. A person commits the offense of Assault in the Third Degree if he intentionally causes bodily injury to another person.
>
> There are two material elements to this offense, each of which must be proven beyond a reasonable doubt.
>
> These two elements are:
>
> 1. On or about February 17, 2000, in the City and County of Honolulu, Hawai'i, the Defendant caused bodily injury to another person; and
>
> 2. The Defendant did so intentionally.

Defense counsel objected to Supp. Instr. 1, stating that the instruction was

> confusing and prejudicial to the defense because State's instruction number 1 sets forth the elements of the crime for which the defendant was charged, and the offense is an Unauthorized Entry into a Motor Vehicle.
>
> It has been a major part of the defense's theories that there was no prosecution with the intent to commit a crime therein against a person or against property rights for this late . . . there was nothing during evidence, the taking of the evidence, that went to the commission of a crime against a person or property rights as the case unfurled and unfolded without any disclosure . . . prior to this jury instruction. . . .
>
> There are many crimes, Terroristic Threatening, a Harassment that could have been charged or that could have been the intent of the crime. But now that the evidence has been taken and it looks perhaps most like assault, only at this late period of the trial is the jury going to receive an instruction about Assault Third

which they have not had up until this point. So I think it is very confusing and prejudicial to the . . . defendant. For those reasons, we strenuously object.

The trial court allowed the instruction, explaining that similar instructions were given in *State v. Mahoe*, 89 Hawai'i 284, 972 P.2d 287 (1998), and that this court in *Mahoe* "saw nothing wrong" in giving such instruction. The trial court further stated: "I believe that [inclusion of the jury instruction on assault] would be appropriate for proper instruction . . . as to the applicable law that the elements of the offense which the State contends the defendant intended to commit at the time the vehicle was entered be given to the jury."

The trial court subsequently instructed the jury in relevant part as follows:

> In the indictment defendant is charged with the offense of Unauthorized Entry into a Motor Vehicle. A person commits the offense of Unauthorized Entry into a Motor Vehicle if he intentionally or knowingly enters unlawfully a motor vehicle with intent to commit therein a crime against a person.
>
> There are two material elements . . . to this offense, each of which the prosecution must prove beyond a reasonable doubt. These two elements are: one, on or about February 17, 2000, in the City and County of Honolulu, State of Hawai'i, the defendant intentionally or knowingly entered unlawfully a motor vehicle; and, two, when the defendant unlawfully entered the motor vehicle, the defendant at the time had the intent to commit therein a crime against a person.
>
> Assault in the Third Degree is a crime against a person. A person commits the offense of Assault in the Third Degree if he intentionally causes bodily injury to another person. There are two material elements to this offense, each of which must be proven beyond a reasonable doubt.
>
> These two elements are: One, on or about February 17, 2000, in the City and County of Honolulu, State of Hawai'i, the defendant caused bodily injury to another person; and, two, the defendant did so intentionally.

'Bodily injury' means physical pain or any impairment of physical condition.

During deliberations, the jury sent out two communications to the court. The first communication stated: "Does the mace entering the car constitute entry by the person spraying the mace?" The court responded: "You are referred to the court's instructions previously given to you." The second communication stated: "What is the range (distance) that this mace can spray in evidence?" The court responded: "You must rely upon your collective recollection of the evidence presented." There were no objections by either party to the court's responses.

On October 25, 2000, the jury returned a verdict of guilty of UEMV. On January 11, 2001, Faria was sentenced to probation for five years, ordered to pay $100.00 to the Crime Victim Compensation Fund, and to perform 100 hours of community service. This timely appeal followed.

## II. STANDARDS OF REVIEW

### A. Jury instruction

■ " 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " State v. Kinnane, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995). . . .

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " State v. Pinero, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989). . . .

[E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real ques-

tion becomes whether there is a reasonable possibility that error may have contributed to conviction. . . .

State v. Jenkins, 93 Hawai'i 87, 99–100, 997 P.2d 13, 25–26 (2000)(some citations omitted).

State v. Lagat, 97 Hawai'i 492, 495–96, 40 P.3d 894, 898–99 (2002) (some citations omitted) (brackets in original).

■ "Jury instructions to which no objection has been made at trial will be reviewed only for plain error. If the substantial rights of the defendant have been affected adversely, the error may be considered as plain error." State v. Aganon, 97 Hawai'i 299, 302, 36 P.3d 1269, 1272 (2001) (internal citations and quotation marks omitted), reconsideration denied, 97 Hawai'i 299, 36 P.3d 1269 (2002).

### B. Exclusion of Testimony

■ In Hawai'i, admission of opinion testimony is a matter within the discretion of the trial court, and only an abuse of that discretion can result in reversal. . . . Generally, to constitute an abuse of discretion, it must appear that the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Toyomura, 80 Hawai'i 8, 23–24, 904 P.2d 893, 908–09 (1995) (citations, quotation marks, and brackets omitted).

## III. DISCUSSION

### A. Instruction on what constitutes "entry"

■ Faria contends that the definition of unlawful "entry" was outcome determinative and, therefore, the trial court plainly erred[2] in failing to instruct the jury on what constitutes "entry" into a motor vehicle. Faria points to jury communication No. 1 (asking whether the mace entering the vehicle constituted "entry" by the person spraying the

---

**2.** There is no evidence in the record that either party: (1) contested the meaning of the word "entry" in the UEMV statute; (2) requested the trial court to define "entry" in the jury instructions; or (3) objected to the trial court's response to the jury communication no. 1. However, this court may notice plain error or defects affecting substantial rights although they were not brought to the attention of the trial court. See Hawai'i Rules of Penal Procedure Rule 52(b) (2000); see also Hawai'i Rules of Appellate Procedure Rule 28(b)(4).

mace) as evidence that the absence of an instruction defining "entry" was outcome determinative and prejudicial to his defense.

The Hawai'i Penal Code does not provide a definition of "entry" in the UEMV statute nor in the burglary statutes, *see* HRS §§ 708–810 and 708–811 (1993), upon which the UEMV statute is modeled. Moreover, this court has not construed the term "entry" in the context of either statute.

As previously indicated, under the UEMV statute, "[a] person commits the offense of [UEMV] if the person intentionally or knowingly enters . . . unlawfully in a motor vehicle with the intent to commit a crime[.]" HRS § 708–836.5. The language, however, is unclear as to what specific conduct must be proven to establish that a person "entered" a vehicle in order to constitute unauthorized "entry."

■ Although words with commonplace meanings need not necessarily be defined for a jury, an instruction should be given where words are susceptible to differing interpretations, only one of which is a proper statement of the law. *See, e.g., State v. Shabazz*, 98 Hawai'i 358, 385, 48 P.3d 605, 632 (App.2000) (stating that because the common meaning of "consent" subsumed both express and implied consent, the jury should have been given a more specific definition). The word "enter" is susceptible to more than one meaning. *Sears v. State*, 713 P.2d 1218, 1219 (Alaska Ct.App.1986). "Enter" could mean an intrusion into a place by a person's whole body, by part of the body, or by an instrument appurtenant to the person's body.

Many jurisdictions have defined "entry," generally or in varying forms, as an intrusion with the whole or any part of the body, hand, or foot, or with any instrument or weapon, introduced for the purpose of committing a crime. *See, e.g., Hebron v. State*, 331 Md. 219, 627 A.2d 1029, 1038 (1993) ("the term 'entering' . . . requires that some part of the

body of the intruder or an instrument used by the intruder crosses the threshold, even momentarily, of the house"); *Sears*, 713 P.2d at 1220 (an intruder enters by entry of his whole body, part of his body, or by insertion of any instrument that is intended to be used in the commission of a crime); *State v. Ervin*, 223 Kan. 201, 573 P.2d 600 (1977); *State v. Sneed*, 38 N.C.App. 230, 247 S.E.2d 658, 659 (1978); *Edelen v. United States*, 560 A.2d 527, 530 (D.C.1989); *State v. Nichols*, 572 N.W.2d 163, 164 (Iowa Ct.App.1997); *People v. Valencia*, 28 Cal.4th 1, 120 Cal.Rptr.2d 131, 46 P.3d 920, 929 (2002); *Griffin v. State*, 815 S.W.2d 576, 578 (Tex.Crim.App.1991).

Courts in some jurisdictions define "entry" more narrowly as occurring when any part of the person's physical body crosses the threshold. However, although those courts have not expressly addressed the question whether an intrusion of an instrument appurtenant to the person's body crossing the threshold is sufficient to satisfy the element of "entry," neither do they expressly preclude the definition utilized by a number of other jurisdictions. *See generally State v. Fernandes*, 783 A.2d 913, 917 (R.I.2001); *State v. Johnson*, 587 S.W.2d 636, 637–38 (Mo.Ct.App.1979); *People v. King*, 61 N.Y.2d 550, 475 N.Y.S.2d 260, 463 N.E.2d 601, 602–03 (1984); *Commonwealth v. Gordon*, 329 Pa.Super. 42, 477 A.2d 1342, 1348 (1984).

■ Based on the foregoing discussion, we hold that, for purposes of the UEMV statute, "entry" is defined as the least intrusion into a motor vehicle with the whole physical body, with any part of the body, or with any instrument appurtenant to the body introduced for the purpose of committing a crime against a person or against property rights.[3]

■ In the present case, it is undisputed that the spray emitting from the mace can entered the vehicle; however, whether

---

3. For example, if a person is standing on the outside of a vehicle and swings a baseball bat into an open window, striking an occupant in the head, but no part of his body actually crosses the threshold, the wielding of the baseball bat, which is appurtenant to the person's body and which crosses the threshold, is sufficient, under the definition we announce today, to complete the

offense. On the other hand, suppose a person is standing on the outside of a vehicle and throws a rock through an open window, which strikes an occupant in the head. Because the rock is not appurtenant to the person's body at the point it crosses the threshold into the vehicle, the act of throwing the rock is insufficient to complete the offense.

the spray (without either the can or any part of Faria's body) crossing the threshold constituted entry within the meaning of the UEMV statute is a question of law that the trial court's instructions should have resolved for the jury. *Valencia,* 120 Cal.Rptr.2d 131, 46 P.3d at 929–30 (holding that a trial court's instructions must resolve a legal issue for the jury, and may not invite the jury to resolve the question for itself). It is well-settled that

> [t]he trial court is the sole source of all definitions and statements of law applicable to an issue to be resolved by the jury. Moreover, it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he or she shall state to them fully the law applicable to the facts. And faced with inaccurate or incomplete instructions, the trial court has a duty to, with the aid of counsel, either correct the defective instructions or to otherwise incorporate it into its own instructions.

*Culkin,* 97 Hawai'i at 214, 35 P.3d at 241 (quoting *Kinnane,* 79 Hawai'i at 50, 897 P.2d at 977).

■ As previously indicated, the jury was instructed that:

> A person commits the offense of Unauthorized Entry into a Motor Vehicle if he intentionally or knowingly enters unlawfully a motor vehicle with intent to commit therein a crime against a person. There are two material elements of this offense— to this offense, each of which the prosecution must prove beyond a reasonable doubt. These two elements are: one, on or about February 17, 2000, in the City and County of Honolulu, State of Hawai'i, the defendant intentionally or knowingly entered unlawfully a motor vehicle; and, two, when the defendant unlawfully entered the motor vehicle, the defendant at the time had the intent to commit therein a crime against a person.

In response to the jury's question as to whether the spray entering the vehicle constituted entry by the person doing the spraying, the trial court referred the jurors to instructions that failed to define the specific

conduct that constituted entry for purposes of the UEMV statute. However, "[m]erely informing the jury that it should consider the court's instructions as a whole cannot obviate an error of *omission* where the remaining instructions fail to provide the crucial information." *State v. Jenkins,* 93 Hawai'i at 108–09, 997 P.2d at 34–35 (italics in original) (citations omitted).

The jury's question to the court demonstrates that it may have been confused, or at least unclear, as to what constituted "entry" for purposes of UEMV. In the absence of a definition, the jury could have concluded that the spray emitting from the mace container constituted "entry" by Faria sufficient to satisfy that requirement in the UEMV statute. Because the spray, which was not appurtenant to any part of Faria's body, was insufficient to satisfy the UEMV statute, the jury would have had to conclude that either the can (appurtenant to Faria's hand) or some part of Faria's body crossed the threshold of the vehicle. However, in light of the jury communication, we cannot be sure what the jury decided in rendering its verdict. We, therefore, conclude that there is a reasonable possibility that the inadequate jury instructions and the trial court's failure to clarify and/or define "entry" confused the jury and that such confusion resulted in substantial prejudice to Faria or contributed to his conviction. Accordingly, we hold that the trial court committed plain error when it failed to define the specific conduct that constituted entry for purposes of the UEMV statute. *Cf. Culkin,* 97 Hawai'i at 219, 35 P.3d at 244 (holding that the circuit court committed plain error because there was a reasonable possibility that the misleading jury instructions contributed to the defendant's conviction).

We now turn to Faria's other two points of error on appeal and address them below.

B. *Instruction as to Assault*

■ Faria disputes the trial court's interpretation of *Mahoe* and argues that the trial court erroneously instructed the jury on the offense of assault where assault was not in the indictment as the predicate crime. We disagree.

In *Mahoe*, this court held that the defendant's rights were violated because the prosecution did not elect one of two distinct acts (harassment or assault) upon which it was relying to support the burglary charge, nor did the court give a unanimity instruction. *Mahoe*, 89 Hawai'i at 287, 972 P.2d at 290. In the present case, the inclusion of the assault instruction informed the jury that assault in the third degree was the only predicate crime to be considered and prevented the jury from speculating as to the crime Faria intended to commit when he entered the car.

Furthermore, this court held in *Lagat* that, within the context of burglary statutes and, by extension, the UEMV statute, "the particular crime intended to be committed is . . . [not] an essential element which must be alleged[.]" *Lagat*, 97 Hawai'i at 498, 40 P.3d at 900 (quoting *State v. Robins*, 66 Haw. at 314–15, 660 P.2d at 41.) "[A]lthough it certainly may be preferable for the prosecution to allege the particular crime intended to be committed under the UEMV statute, we refuse to require it where no unfair surprise or prejudice results." *Lagat*, 97 Hawai'i at 499, 40 P.3d at 901 (holding that it was transparent from the record that no unfair surprise nor resulting prejudice ensued from the prosecution's failure to list in the indictment the charge of assault, which was the alleged predicate offense for UEMV, and the jury instructions on assault were not erroneous). As in *Lagat*, it should not have come as a surprise to Faria that the predicate offense for UEMV was assault.

Accordingly, pursuant to this court's reasoning in *Lagat*, we reject Faria's contention that the trial court's jury instructions on assault were erroneous.

## C. *Exclusion of testimonial evidence*

■ Faria contends that the opinion testimony of Officer Okimoto would have indicated that the legislature did not intend for the UEMV statute to apply to the facts of this case. Faria argues that the trial court's failure to permit opinion testimony by Officer Okimoto was prejudicial to the outcome and was an abuse of the trial court's discretion.

■ "The right to confront and to cross-examine a witness is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *State v. El'Ayache*, 62 Haw. 646, 649, 618 P.2d 1142, 1144 (1980) (per curiam) (citations omitted). Therefore, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Hawai'i Rules of Evidence (HRE) Rule 403 (2000). Furthermore, a lay witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." *See Toyomura*, 80 Hawai'i at 25, 904 P.2d at 909 (quoting HRE Rule 701).

The trial court sustained the prosecution's objections to the defense counsel's cross-examination questions on the following grounds: (1) the officer was not called by the prosecution to express any opinions regarding the validity of the charges being brought; (2) there was no indication that it was Officer Okimoto's determination that this case be brought forward at any point, and, therefore, his opinion regarding the validity of the charges was not relevant; and (3) the question whether the alleged offense falls within the intended scope of the statute was a question of law to be addressed by the court, which, in turn, instructed the jury on the applicable law. We agree with the reasoning of the trial court. Admission of Officer Okimoto's opinion testimony on the legislative intent and the scope of the UEMV law would have misled the jury on a question of law that was reserved for determination by the court.

In light of the broad discretion accorded to a trial court in making evidentiary "judgment calls," we hold that the trial court did not abuse its discretion in limiting the scope of cross-examination to the subject matter of direct examination and precluding admission of Officer Okimoto's testimony because his

opinion on the scope of the UEMV law was not relevant. *See State v. White*, 92 Hawai'i 192, 206, 990 P.2d 90, 104 (1999) (trial court did not abuse its discretion in limiting the scope of cross-examination).

Moreover, with regard to Faria's contention that the legislature did not intend to deter Faria's particular conduct by the UEMV statute, this court has noted that,

[t]he construction of [the UEMV statute] is a question of law which the appellate court reviews de novo.... Departure from the literal construction of [the UEMV statute] is justified only when such construction would produce an absurd and unjust result and the literal construction is clearly inconsistent with the purposes and policies of the statute.

*Lagat*, 97 Hawai'i at 499, 40 P.3d at 901 (quoting *State v. Villeza*, 85 Hawai'i 258, 272–73, 942 P.2d 522, 534–35 (1997)) (noting that [the UEMV statute] plainly states that it is unlawful to enter into a motor vehicle in order to, among other things, commit a crime against a person). Thus, the UEMV statute specifically penalizes the conduct Faria was found to have engaged in by the jury. Accordingly, Faria's contention is without merit.

## IV. *CONCLUSION*

Based on the foregoing, we vacate Faria's conviction and sentence and remand this case for a new trial consistent with this opinion.

Concurring and Dissenting Opinion by NAKAYAMA, J.

I agree with the holding of the majority that at least a part of the body must intrude in a vehicle in order to constitute an "entry" as used in the Unauthorized Entry of Motor Vehicle (UEMV) statute. I also agree that the particular offense intended to be committed need not be alleged in the complaint charging a UEMV. I write separately to note my disagreement with the majority's holding in Part III(A) that the circuit court's failure to provide jury instructions regarding the definition of the term "entry" should be recognized as plain error. I do not believe that this failure rises to the level of plain error because (1) defendant-appellant Gary Faria

(Faria) did not object to the general instruction regarding the UEMV offense and did not request a specific instruction regarding the definition of "entry," and (2) there is no evidence that this failure affected the jury's application of the facts and law and thus the fundamentally fair trial that Faria received. For these reasons, I dissent.

"As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998) (citation omitted). It is undisputed that Faria did not object to the general UEMV instruction given to the jury and did not request a specific instruction regarding the definition of "entry." Thus, the circuit court's failure to give such an instruction can only be reviewed for plain error.

This court may recognize plain error "in exceptional circumstances" if there is evidence of highly prejudicial error adversely affecting substantial rights. *See State v. Arceo*, 84 Hawai'i 1, 34, 928 P.2d 843, 876 (1996) (citing *United States v. Ancheta*, 38 F.3d 1114, 1116 (9th Cir.1994)) (Nakayama, J., dissenting) ("Plain error is a highly prejudicial error affecting substantial rights, and is found only in exceptional circumstances."); *State v. Fox*, 70 Haw. 46, 56, 760 P.2d 670, 675–76 (1988) (citing *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)) ("In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.").

This discretion to recognize plain error must be mindful of the fact that the doctrine of plain error is a departure from the general rules of waiver that govern appellate review. *See Montalvo v. Lapez*, 77 Hawai'i 282, 304, 884 P.2d 345, 367 (1994) (citations omitted) (Nakayama, J., dissenting) ("The plain error doctrine represents a departure from the normal rules of waiver that govern appellate review, *i.e.*, that a party who invites error in the trial court waives the right to have the

error considered on appeal."); *Fox,* 70 Haw. at 55, 760 P.2d at 675 (citation omitted) ("The plain error rule is a departure from the position usually presupposed by the adversary system that a party must look to his counsel to protect him and that he must bear the cost of the mistakes of his counsel."). Thus, this court has stated that the "power to deal with plain error is one to be exercised sparingly and with caution ...," *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 75 (1993) (citation omitted); *Fox,* 70 Haw. at 57, 760 P.2d at 676 (citation omitted), and that "the decision to take notice of plain error must turn on the facts of the particular case ...," *Id.* at 56, 760 P.2d at 676.

I do not believe that the facts of this case exhibit "exceptional circumstances," such that an invocation of the plain error doctrine is warranted, inasmuch as the jury's communication to the court does not necessarily evidence that the jury convicted Faria of UEMV based on the entry of the mace into the vehicle. The circuit court instructed the jury regarding the UEMV offense as follows:

> In the indictment, Defendant is charged with the offense of Unauthorized Entry into a Motor Vehicle.
>
> A person commits the offense of Unauthorized Entry into a Motor Vehicle if he intentionally or knowingly enters unlawfully a motor vehicle, with intent to commit therein a crime against a person.
>
> There are two material elements to this offense, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are:
>
> 1. On or about February 17, 2000, in the City and County of Honolulu, State of Hawai'i, the Defendant intentionally or knowingly entered unlawfully a motor vehicle; and
>
> 2. When the Defendant unlawfully entered the motor vehicle, the Defendant, at that time, had the intent to commit therein a crime against a person.

In response to this instruction, the jury asked the following question: "Does the mace entering the car constitute entry by the person spraying the mace?" The circuit court's answer was "[y]ou are referred to the court's instructions previously given to you."

In asking this question, the majority assumes that the jury may have been confused regarding what constituted "entry" for purposes of UEMV and thus may have misapplied the facts and law.

A more practicable assumption exists and is supported by the jury's subsequent question. At trial, both the State of Hawai'i and Faria, in questioning every witness to the incident, focused on whether any part of Faria's body, but specifically Faria's arm, entered the car. Thus, unless the jurors were completely ignoring the evidence presented throughout the three day trial, it was clear that the issue was whether Faria's arm physically entered the vehicle when he sprayed the mace. One witness testified that Faria's arm "was about elbow length inside the vehicle...." Another witness testified that she did not know whether Faria's arm entered the car because she "ducked" as soon as Faria sprayed the mace. Yet another witness testified that at least some part of Faria's arm entered the vehicle. Faria himself testified that he never reached into the car and that he sprayed the mace from a distance of about "three or more feet away from the vehicle...."

Amidst the range of testimony regarding whether Faria's arm physically entered the vehicle, one piece of evidence was certain and undisputed—Faria sprayed mace into the vehicle, contacting at least two of the occupants in the vehicle. From this, the more probable assumption to make is that the jury concluded that if the mace entering the car constituted "entry," the testimony concerning physical entry of Faria's arm need not be weighed. Thus, the jury submitted the question to the court: "Does the mace entering the car constitute entry by the person spraying the mace?" This question does not necessarily evidence a confusion with the definition of "entry," nor a misapplication of the facts or law rising to the level of plain error.

The jury's second question supports the conclusion that it did not misapply the facts and law rising to a level of plain error. Approximately fifteen minutes after submitting the first question to the circuit court, the jury submitted a second question, asking the

following: "What is the range (distance) that this mace can spray in evidence?" This question does not assume, nor is it based on the belief, that the entry of mace into the vehicle constituted an "entry." In fact, this question assumes that the entry of mace is not an "entry" for purposes of UEMV, inasmuch as the distance of the spray would either be consistent with or contradict Faria's testimony that his arm did not physically enter the vehicle, as he testified that he was standing three or more feet from the vehicle when he sprayed the mace that contacted both the passenger and the driver of the vehicle. As such, there is no evidence to suggest that the jury misunderstood or misapplied the law, and the failure to give an instruction does not rise to the level of plain error.

When applying the plain error doctrine, it must be kept in mind that, in the absence of an objection to the alleged error below, the question is not whether the trial court should have done something differently (i.e., in this case, whether the trial court should have provided an instruction). The question is whether the trial court's alleged error rises to the level of adversely affecting the fairness, integrity, and reputation of judicial proceedings such that this court is justified in ignoring the general rules of waiver under our adversary system. Otherwise, the rules of waiver under our adversary system are not purposeful and are eroded. It is for the foregoing reasons that I respectfully dissent.

Opinion by RAMIL, J. Concurring in part and Dissenting in part.

I agree that the trial court committed plain error when it failed to define the specific conduct that constituted entry for purposes of the Unauthorized Entry into Motor Vehicle (UEMV) statute. It is likely that such failure contributed to Faria's conviction. Thus, the jury instructions were prejudicially insufficient and misleading. *See State v. Arceo,* 84 Hawai'i 1, 11, 928 P.2d 843, 853 (1996). More importantly, as I have stated in my dissent in *State v. Lagat,* 97 Hawai'i 492, 503–04, 40 P.3d 894, 905–06 (2002) (Ramil, J., dissenting), the overt commentary to the UEMV statute indicates that the legislature

had a very specific purpose in mind when it enacted this statute. I do not think that the legislature intended the UEMV statute to apply to the facts presented in this case.

As I have explained in my dissent in *Lagat:*

The commentary to HRS § 708–836.5 states, "Act 87, Session Laws 1996, added this section to the penal code and made the offense of unauthorized entry into motor vehicle a class C felony *due to the increased number of car thefts in the State.*" Also, HRS § 708–836.5 is found in HRS chapter 708, "Offenses Against Property Rights," under Part IV, "Theft and *Related Offenses.*"

These legislative choices, specifically the overt commentary to the UEMV statute, suggest the legislature had a very specific purpose in mind when enacting the UEMV statute. Any general application of the statute, without requiring that [the defendant's] criminal conduct be related to theft, would not only exceed the bounds of the statute's stated purpose, but would unnecessarily "trump" other statutes, [such as our second degree burglary statute].

97 Hawai'i at 503, 40 P.3d at 905 (emphasis in the original). I believe that, on the facts of this case, the majority's misapplication of the law runs afoul of the reason and spirit of the statutory scheme at issue.

*Lagat* is wrongly decided. The instant case is another illustration of how extending *Lagat* to all fact scenarios where a crime committed in a vehicle is involved leads to absurd and unjust results. Here, it is likely that Faria was convicted of a class C felony because the mace spray entered vehicle. Such application is clearly beyond the legislature's contemplation when it enacted the statute.

Opinion of ACOBA, J., Concurring in part with RAMIL, J. and Dissenting to the decision of MOON, C.J.

Chief Justice Moon's opinion adopts and incorporates the initial position of Justice Ramil that the first circuit court committed plain error in failing to submit an instruction to the jury on the meaning of "entry" in Hawai'i Revised Statutes (HRS) § 708–836.5

(Supp.2001). Inasmuch as Justice Ramil's position set forth the ultimate majority result, I believe his opinion should have announced the majority disposition in this case. Accordingly, I concur in Justice Ramil's opinion with respect to vacating the judgment of conviction and remanding the case to the circuit court for new instructions to the jury. I disagree with the view that, in light of the arguments raised by Defendant–Appellant Gary Faria (Defendant), Plaintiff Appellee State of Hawai'i (the prosecution) was not required to specify the crime it charged Defendant intended to commit upon entry of the vehicle. *See* plurality opinion at 391–392, 60 P.3d at 341–342.

## I.

Because the term "entry" is ambiguous, each juror could have had a different view of its meaning, thereby depriving Defendant of a unanimous verdict. *See State v. Yamada,* 99 Hawai'i 542, 562, 57 P.3d 467, 487 (2002) (Acoba, J., concurring) ("Criminal defendants are entitled to a unanimous verdict under the Hawai'i Constitution and pursuant to court rule."); *see also State v. Miyashiro,* 90 Hawai'i 489, 499, 979 P.2d 85, 95 (App.1999) (holding that if the jurors cannot agree unanimously on the affirmative defense of entrapment, "no unanimous verdict can be reached as to the charged offense because some jurors would vote for conviction and others for acquittal"). In the absence of an instruction as to the term entry in HRS § 708–836.5, the jury could have erroneously convicted Defendant if it believed the dispersion of mace into the vehicle constituted a prohibited entry. The jurors could have rendered such a verdict even if (1) they believed Defendant's testimony that his body did not enter the vehicle, or (2) that, because of conflicting testimony, the prosecution failed to prove beyond a reasonable doubt that any part of Defendant's body or the can of mace protrud-

ed into the complaining witness's vehicle. The possibility that this occurred is supported by the jury's two inquiries—one, as to whether the "mace entering the car *constitutes entry by the person* spraying," (emphasis added) and second, as to "what ... [is] the range (distance) that this mace can spray?"

## II.

Defendant also maintains that it was error to instruct on assault in the third degree inasmuch as "the indictment was silent as to assault being the predicate act, and before and during the trial during the taking of evidence and argument of counsel, ... assault [was not] mentioned as the predicate crime." Consequently, he argues, "[t]he defense could not prepare to defend the case against a moving target." I believe we will continue to be beset with arguments and thus, appeals, on the failure of the prosecution to designate the crime it believed a defendant intended to commit in entering a motor vehicle.

In that regard, the evidence submitted by the prosecution potentially supported two separate offenses, assault in the third degree as was ultimately decided by the circuit court, or harassment. Assault in the third degree is committed if a person "[i]ntentionally, knowingly, or recklessly causes bodily injury to another person." HRS § 707–712 (1993). Harassment is committed if a person, "with intent to harass, annoy, or alarm any other person, ... [s]trikes shoves, kicks, or otherwise touches another person in an offensive manner or subjects the other person to offensive physical contact[.]" HRS § 711–1106(1)(a) (Supp.2001).[1] Because the evidence supported more than one crime, a trial, as Defendant intimates, devolves into one of gamesmanship.

---

1. Both of these offenses are petty misdemeanors. Thus, while either offense could be charged, the prosecution chose instead to charge a violation of HRS § 708–836.5, which raised the conduct involved from a petty misdemeanor punishable by a maximum term of thirty days in jail, to five years in prison, because the crime arguably involved entry into a vehicle. While such a charging practice falls within the broad language of

HRS § 708–836.5, it is inconsistent with the purpose of the statute as expressed in the legal reports, *see State v. Lagat,* 97 Hawai'i 492, 503, 40 P.3d 894, 905 (2002) (Ramil, J., dissenting) ("[A]lthough the language of [HRS 708–836.5] is clear on its face, the statutory scheme and stated legislative intent are clearly at odds with the statute's application in [defendant's] case.").

Under the procedure followed by the court, identification of the crime ultimately to be disclosed to the jury is withheld and determined only after the evidence is adduced. This may result in trial by ambush. It is wholly at odds with the basic premise in our law that a criminal defendant be apprised of the basis for the charge against him or her in order to properly defend. *See State v. Vanstory*, 91 Hawai'i 33, 44, 979 P.2d 1059, 1070 (1999) ("[T]he purpose of an indictment is to apprise the accused of the charges against him, so that he may adequately prepare his defense, and to describe the crime charged with sufficient specificity to enable him to protect against future jeopardy for the same offense." (Citation and internal quotation marks omitted.)); *State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996) ("[T]he sufficiency of the charging instrument is measured, *inter alia*, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he [or she] must be prepared to meet." (Citation and internal marks omitted.)).

That fundamental premise was said to be satisfied in *State v. Robins*, 66 Haw. 312, 660 P.2d 39, *reconsideration denied*, 66 Haw. 679, 660 P.2d 39 (1983), although the crime was not alleged, because in that case this court said that, "on the record [there]," there was "no violation of the right to be informed." *Id.* at 317, 660 P.2d at 42–43. A *Robins* analysis is wholly lacking in this case, and the claim of prejudice raised by Defendant is simply dismissed by the conclusory statement of the plurality "that the predicate offense for [unauthorized entry into motor vehicle (UEMV)] was assault." Plurality opinion at 391, 60 P.3d at 341. But, "[i]n charging UEMV, the prosecution must have discerned a rational basis in the facts for inferring an accused's intent to commit certain crimes and, therefore, should be required to designate such crimes." *State v. Lagat*, 97 Hawai'i 492, 503, 40 P.3d 894, 905 (2002) (Acoba, J., concurring). "A general

allegation [which does not specify the crime intended to be committed] invites unfair surprise and resulting prejudice." *Id.* at 501, 40 P.3d at 903 (internal quotation marks, brackets, and citation omitted).

Even if "the record" in *Robins* showed the defendant was "informed," "resort to the record is an indirect method of ascertaining the crimes supposedly intended" to be committed. *Id.* This approach "may give rise to disputed issues of whether the record adequately and sufficiently provided such notice." *Id.* And, "a search of the record for such information places an unnecessary burden not only on the parties, but also on the trial court . . ., and on the appellate courts, as it did in *Robins*." *Id.* We should join the majority of jurisdictions that require that the crime be specified. *See id.* at 500, 40 P.3d at 902 ("[N]evertheless, the majority of courts in various jurisdictions passing upon whether the crime of burglary has been sufficiently alleged have upheld timely challenges to the sufficiency of indictments where the specific crime intended to be committed has not been alleged." (Quoting *Robins*, 66 Haw. at 315, 660 P.2d at 41.) (Brackets and ellipsis points omitted.)).

Thus, on remand, I would require that the prosecution designate the crime as to which it had decided Defendant intended to commit when it charged him. Anything less compromises the fundamental fairness and truth finding function of a criminal trial. *See State v. Haanio*, 94 Hawai'i 405, 415, 16 P.3d 246, 256 (2001) ("Our courts are not gambling halls but forums for the discovery of truth. . . ." (Citation and internal quotation marks omitted.)).