**Electronically Filed
Supreme Court
SCWC-18-0000691
04-AUG-2022
09:05 AM
Dkt. 20 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---oOo---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee/Cross-Appellant,

vs.

LORRIN Y. ISHIMINE,
Petitioner/Defendant-Appellant/Cross-Appellee.

_____

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000691; CASE NO. 2PC161000679)

SCWC-18-0000691

AUGUST 4, 2022

McKENNA, WILSON, AND EDDINS, JJ.; WITH
NAKAYAMA, J., DISSENTING, WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.   Introduction

At issue in this appeal is whether the Circuit Court of the

Second Circuit ("circuit court")[1] plainly erred[2] in failing to

---

[1]    The Honorable Peter T. Cahill presided.

[2]    This issue was not raised in the notice of appeal because the notice of appeal predated State v. Sheffield, 146 Hawaiʻi 49, 456 P.3d 122 (2020), discussed herein.  After acceptance of certiorari, this court ordered and

(continued . . . )

give a "Sheffield instruction" to a jury in a kidnapping trial. In this case, the defendant was charged with kidnapping under Hawai'i Revised Statutes ("HRS") § 707-720(d)(1) (2014), which provides, "A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to . . . [i]nflict bodily injury upon that person or subject that person to a sexual offense . . . ." Sheffield held that a jury must be instructed that the "restraint" necessary under HRS § 707-720(d)(1) is "restraint in excess of any restraint incidental to the infliction or intended infliction of bodily injury or subjection or intended subjection of a person to a sexual offense . . . ." State v. Sheffield, 146 Hawai'i 49, 51, 456 P.3d 122, 124 (2020).

We hold that the circuit court erred in failing to so instruct the jury, and such error was not harmless beyond a reasonable doubt. Therefore, we vacate the ICA's April 15, 2020 Judgment on Appeal, entered pursuant to its February 27, 2020

---

considered supplemental briefing pursuant to Hawai'i Rules of Appellate Procedure Rule 28(b)(4)(D) (2022), which provides in relevant part:

> [T]he appellate court, at its option, may notice a plain error not presented. If an appellate court, when acting on a case on appeal, contemplates basing the disposition of the case wholly or in part upon an issue of plain error not raised by the parties through briefing, it shall not affirm, reverse, or vacate the case without allowing the parties the opportunity to brief the potential plain-error issue prior to disposition. . . .

See infra Sections IV.A and IV.C.

Summary Disposition Order ("SDO"), and remand this case to the circuit court for further proceedings.

## II.  Background

### A.  Jury trial Proceedings

On August 18, 2016, the State charged Lorrin Y. Ishimine ("Ishimine") with one count of Kidnapping, in violation of HRS § 707-720(d)(1) (Count One); two counts of Felony Abuse of Family or Household Member, in violation of HRS § 709-906(1) and/or (8) (2014 & Supp. 2015 & 2016) (Counts Two and Three); and one count of Abuse of Family or Household Member, in violation of HRS § 709-906 (2014 & Supp. 2015 & 2016) (Count Four).  Before trial, the circuit court dismissed Counts Two, Three, and Four without prejudice.

At Ishimine's jury trial on the remaining kidnapping count (Count One), the State called Maui Police Department ("MPD") Officers Victor Santana and Keola Wilhelm.

Officer Santana testified that he was asleep at home on the afternoon of August 17, 2016, when he heard a vehicle speeding down the street.  He looked out his window and saw the vehicle pull into a driveway at a two-story house across from his apartment.  Officer Santana saw a man exit the car, yelling and screaming and trying to get someone out of the vehicle.  Officer Santana got dressed, and when he returned to the window, he saw the man grabbing a woman from behind and dragging her up the

stairs of the two-story house.  The woman was screaming for help, kicking her feet, and struggling to get away.  The woman's screaming and struggling lasted for a minute, which was the entire time the man dragged her up the stairs.  Officer Santana then called 911, watched the house for anyone entering or leaving, and awaited the arrival of responding officers.

Officer Keola Wilhelm testified that he was one of the responding officers and was briefed at the scene by Officer Santana.  The responding officers approached the front door of the two-story home and spoke with a woman who initially stated that no one else was home.  The woman eventually allowed the police officers inside the residence and directed them to a locked bedroom door.  After knocking and announcing their presence three times, the police officers knocked down the bedroom door.  Officer Wilhelm saw the defendant on the bed, holding a woman down and covering her mouth.  Officer Wilhelm ordered the defendant to release the woman and exit the bedroom, and the defendant complied.

After the State rested, the defense rested as well, with Ishimine waiving his right to testify.  The court then instructed the jury as follows on the offense of kidnapping:

> The Defendant, LORRIN Y. ISHIMINE, is charged with the offense of Kidnapping.
>
> A person commits the offense of Kidnapping if he intentionally or knowingly restrains another person with

intent to inflict bodily injury upon that person or subject that person to a sexual offense.

There are three material elements of the offense of Kidnapping, each of which the prosecution must prove beyond a reasonable doubt. These three elements are:

1. That, on or about the 17th day of August, 2016, in the County of Maui, State of Hawai'i, the Defendant restrained another person; and

2. That the Defendant did so intentionally or knowingly; and

3. That the Defendant did so with the intent to inflict bodily injury upon that person or subject that person to a sexual offense.

The circuit court gave the jury the following instruction on the definition of "restrain": "to restrict a person's movement in such a manner as to interfere substantially with her liberty by means of force."[3]

The jury found Ishimine guilty as charged of kidnapping. The jury also found that the State proved beyond a reasonable doubt that Ishimine did not voluntarily release the woman prior to trial. As a result of this finding, Ishimine was convicted

---

[3] This definition of "restrain" was adapted from Hawai'i Pattern Jury Instructions – Criminal 9.00 to reflect the evidence adduced at trial. The pattern jury instruction reads as follows:

"Restrain" means to restrict a person's movement in such a manner as to interfere substantially with the person's liberty:
(1) by means of force, threat, or deception; or
(2) if the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of the person.

The modified "restraint" instruction was given by agreement of the parties. The circuit court did not give the jury the Sheffield instruction because we had not decided Sheffield at the time of Ishimine's trial.

of kidnapping as a class A felony.  See HRS § 707-720(2)&(3) (2014) (stating that "kidnapping is a class A felony" that can be reduced to a class B felony where "the defendant voluntarily released the victim, alive and not suffering from serious or substantial bodily injury, in a safe place prior to trial," respectively).  Ishimine was sentenced to twenty years of imprisonment.

## B.  ICA Proceedings

Ishimine appealed his conviction and sentence.  The State cross-appealed.[4]  Before the ICA, Ishimine's points of error were (1) that the circuit court erred in denying his motion to suppress evidence based on the warrantless entry of his home and bedroom; (2) that the circuit court erred in denying Ishimine's motion in limine to preclude hearsay statements made by the woman who answered the door of the residence and told police that Ishimine was not there; and (3) Ishimine's conviction was not supported by substantial evidence.

In an SDO, the ICA rejected each of Ishimine's arguments. State v. Ishimine, CAAP-18-0000691 (App. 2020) (SDO) at 19.

---

[4]    Upon cross-appeal, the State argued that the circuit court erred by (1) suppressing photographs of the inside of Ishimine's residence; (2) refusing to receive the complaining witness's preliminary hearing transcript into evidence; (3) precluding officer testimony of, and photographic evidence of, the complaining witness's physical condition; and (4) striking a portion of Ishimine's Presentence Investigation Report ("PSR") and ordering the Hawai'i Paroling Authority ("HPA") to disregard that information in sentencing Ishimine to a minimum term of imprisonment.

Addressing Ishimine's points of error, the ICA held that (1) exigent circumstances supported the warrantless entry into Ishimine's home and bedroom; (2) the circuit court did not abuse its discretion in allowing testimony that the woman who answered the door told police that Ishimine and the complaining witness were not in the home, as the statement was not admitted for the truth of the matter asserted but to show that the woman was willing to cover up Ishimine's presence; and (3) that substantial circumstantial evidence of Ishimine's state of mind supported his kidnapping conviction.  Ishimine, SDO at 9, 13, 15.  Therefore, the ICA affirmed Ishimine's conviction.[5] Ishimine, SDO at 15.

## C.  Certiorari Application

Ishimine filed an application for writ of certiorari raising the same legal issues he raised before the ICA.  We accepted certiorari, however, to address whether the circuit court plainly erred in failing to give a "Sheffield instruction" in this case.[6]

---

[5]    As a result of the affirmance, the State's points of error on cross-appeal were mooted; however, under the "public interest" exception to the mootness doctrine, the ICA addressed the State's final point of error:  that the circuit court erred in striking a portion of Ishimine's PSR and ordering the HPA to disregard that information in sentencing Ishimine to a minimum term of imprisonment.  Ishimine, SDO at 15, 16, 18.  The ICA found the argument without merit, as the circuit court had authority to modify the PSR, and the HPA would not have considered stricken material in a PSR.  Ishimine, SDO at 18.

[6]    See supra note 2.

### III. Standard of Review:
### Plain Error Review of Jury Instructions

> As a general rule, jury instructions to which no objection has been made at trial will be reviewed only for plain error. An error will be deemed plain error if the substantial rights of the defendant have been affected adversely. Additionally, this court will apply the plain error standard of review to correct errors [that] seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights.

Sheffield, 146 Hawai'i at 53, 456 P.3d at 126 (citation omitted).

### IV. Discussion

### A. Order for Supplemental Briefing

By order dated September 28, 2021, the full court directed the parties to file supplemental briefs addressing the following questions:

> (1) whether the trial court plainly erred when it did not instruct the jurors that any "restraint of [the victim] had to be restraint in excess of restraint incidental to any infliction of bodily injury or a sexual offense upon [the victim]," as required by State v. Sheffield, 146 Hawai'i 49, 61, 456 P.2d 122, 134 (2020); and
>
> (2) whether such plain error, if any, was harmless beyond a reasonable doubt.

### B. The Sheffield Case

We briefly summarize Sheffield to provide context for our order and for this decision. In Sheffield, the defendant (David M. Sheffield) followed a college student as she walked alone at night, announced his intention to beat her up and have sex with her, pulled a loop on her backpack as she tried to cross the

8

street, and dragged her backwards about five to ten steps before she broke free. Sheffield, 146 Hawai'i at 50, 456 P.3d at 123. Like Ishimine, Sheffield was charged with kidnapping, in violation of HRS § 707-720(1)(d). Id. Sheffield was also charged with third degree assault. Sheffield, 146 Hawai'i at 51, 456 P.3d at 124. Like Ishimine, Sheffield proceeded to trial on just the kidnapping charge, because the State moved for, and was granted, dismissal of Sheffield's assault in the third degree charge before trial. Sheffield, 146 Hawai'i at 51, 456 P.3d at 124.

A jury convicted Sheffield of kidnapping. Id. On appeal, Sheffield argued that, "when kidnapping is the only count tried, the State must prove the defendant used a greater degree of 'restraint' than that incidentally used to commit the underlying unprosecuted assault in the third degree offense." Id. He also argued that the jury should be so instructed. Id. We agreed. Id.

After exploring the Model Penal Code ("MPC") and its Commentary, our kidnapping statute and its commentary, and the majority rule about "incidental restraint" among other jurisdictions, we held that "the restraint necessary to support a kidnapping conviction under HRS § 707-720(1)(d) must be restraint that is in excess of any restraint incidental to the infliction or intended infliction of bodily injury or subjection

or intended subjection of a person to a sexual offense." Sheffield, 146 Hawai'i at 55-59, 456 P.3d at 128-32. We also held that the jury should be so instructed. Sheffield, 146 Hawai'i at 60, 456 P.3d at 133. Such an instruction safeguards the defendant against a conviction for kidnapping based on acts of restraint incidental to other crimes.

In arriving at these holdings, we pointed out that the MPC's Commentary characterized prosecution solely for kidnapping (in lieu of prosecution for attempted assault or attempted rape) as "abusive" and an "end run around the special doctrinal protections designed for uncompleted crimes." Sheffield, 146 Hawai'i at 58 n.11, 456 P.3d at 131 n.11. We also questioned whether the legislature intended the term "restraint" under our statutory scheme to support a kidnapping conviction for acts of restraint that are only incidental to other crimes:

> Consider two examples in which restraint could be employed by a defendant with the intent to inflict bodily injury or subject another to a sexual offense. First, a person might grab another person's arm and pull the other person a few feet to land a punch, but fail to do so. Second, a person might lead another by knifepoint through an alley and into a deserted warehouse, for the purpose of committing a sexual offense, but eventually fail. . . . [B]oth defendants may be convicted of kidnapping, which carries a twenty-year prison sentence. This risk warrants the adoption of the rule Sheffield advocates.

Sheffield, 146 Hawai'i at 58, 456 P.3d at 131.

We noted that the majority rule among other jurisdictions is that "restraint or movement merely incidental to some other crime will not support a conviction for kidnapping." Sheffield,

146 Hawai'i at 59, 456 P.3d at 132 (citing State v. Trujillo, 289 P.3d 238, 248 (N.M. Ct. App. 2012)).  We summarized the three tests for "incidental restraint or movement" that have emerged in these jurisdictions as follows:

> (1) whether the confinement, movement, or detention was merely incidental to the accompanying crime or whether it was significant enough, in and of itself, to warrant independent prosecution.
>
> (2) whether the detention or movement substantially increased the risk of harm over and above that necessarily present in the accompanying crime.
>
> (3) when the restraint or movement was done to facilitate the commission of another crime, the restraint or movement must be slight, inconsequential, and merely incidental to the other crime, or be the kind of restraint or movement inherent in the nature of the other crime.  Under this test, the restraint or movement must have some other significance independent of the other crime, in that it makes the other crime substantially easier to commit or substantially lessens the risk of detection.

Sheffield, 146 Hawai'i at 59, 456 P.3d at 132 (citing Trujillo, 289 P.3d at 248).  Whether restraint is merely incidental to another crime depends on the totality of the circumstances. Sheffield, 146 Hawai'i at 59, 456 P.3d at 132 (citing Trujillo, 289 P.3d at 251, 252).

In Sheffield's case, we held the circuit court plainly erred in failing to instruct the jury on "incidental restraint," and such a failure was not harmless beyond a reasonable doubt, because there was a reasonable possibility that the lack of an "incidental restraint" jury instruction contributed to Sheffield's conviction.  Sheffield, 146 Hawai'i at 133, 456 P.3d at 60.  While we noted that a reasonable jury could find that

11

Sheffield's act of restraint (pulling the complaining witness back five to ten feet) was more than merely incidental, we emphasized that such a question was for the jury, properly instructed, to decide. Sheffield, 146 Hawai'i at 61, 62, 456 P.3d at 134, 135. Therefore, we vacated Sheffield's conviction and remanded his case to the circuit court for further proceedings. Sheffield, 146 Hawai'i at 62, 456 P.3d at 135. With our Sheffield decision as a backdrop for Ishimine's case, we next address the parties' arguments in supplemental briefing.

## C. Arguments in Supplemental Briefing

### 1. The State's Arguments

The State argues that the trial court did not plainly err by failing to provide a Sheffield instruction to the jury. The State asserts the evidence showed that Ishimine's use of restraint (in forcing the complaining witness out of a vehicle then up a flight of stairs and into a residence) was far more than incidental to any intended infliction of bodily injury upon the complaining witness. The State points to the three tests for incidental restraint we summarized in Sheffield (i.e., (1) whether the restraint was significant, in and of itself, to warrant independent prosecution; (2) whether the restraint substantially increased the risk of harm over and above that necessarily present in the accompanying crime; and (3) whether the restraint, done to facilitate commission of another crime,

makes the other crime substantially easier to commit or substantially lessens the risk of detection).  146 Hawai'i at 59, 456 P.3d at 132 (citing Trujillo, 289 P.3d at 248).  The State argues that Ishimine's act of dragging the complaining witness up a flight of stairs satisfied all three tests.  First, the movement upstairs was "significant enough, in and of itself, to warrant independent prosecution" for kidnapping.  Second, the movement upstairs "substantially increased the risk of harm over and above that necessarily present" in abuse of a family or household member, because the complaining witness could have been injured on the stairs.  Third, Ishimine's movement of the complaining witness up the stairs, into the dwelling, and into a locked bedroom made abuse of a family or household member substantially easier to commit and lessened the risk of detection, as the crime would have been committed behind closed doors.

The State also points to the hypotheticals posed in the Sheffield opinion:

> Consider two examples in which restraint could be employed by a defendant with the intent to inflict bodily injury or subject another to a sexual offense.  First, a person might grab another person's arm and pull the other person a few feet to land a punch, but fail to do so.  Second, a person might lead another by knife point through an alley and into a deserted warehouse, for the purpose of committing a sexual offense, but eventually fail.

Sheffield, 146 Hawai'i at 58, 456 P.3d at 131.  The State quotes this court as concluding that the restraint in the first example

was "clearly incidental to the intended infliction of bodily injury," while the restraint in the second example was "much more than incidental to the intended subjection of a person to a sexual offense."  Id.  The State asserts that Ishimine's act of dragging the complaining witness up the stairs was more like the second hypothetical; therefore, no rational juror would have found that the restraint Ishimine used was merely incidental to the offense of abuse of a family or household member. Consequently, the State argues that the circuit court did not plainly err in failing to provide the jury with the Sheffield instruction.

The State maintains that, even if the trial court plainly erred in not providing a Sheffield instruction to the jury, the error was harmless beyond a reasonable doubt.  The State argues that Ishimine's acts of dragging the CW up a flight of stairs, into a dwelling, then holding her in a locked bedroom cannot be considered incidental restraint as a matter of law.  Further, the State compares Ishimine's actions to State v. Hernandez, where this court explained that "a short restraint in an area where the victim might suffocate or come to other bodily harm would constitute a substantial interference with liberty. . . ." 61 Haw. 475, 478, 605 P.2d 75, 77 (1980).  The State argues that Ishimine forced the complaining witness into a locked bedroom within a dwelling, with his hand over her mouth; the State

14

contends that those acts could have caused the complaining witness to suffocate or come to other bodily harm.  Therefore, the State concludes, the restraint Ishimine used was sufficient to support his kidnapping conviction, and no rational jury could have found otherwise.

### 2.  Ishimine's Arguments

Ishimine counter-argues that the circuit court plainly erred in failing to give the jury the Sheffield instruction, and such error was not harmless beyond a reasonable doubt.  He argues that the circuit court plainly erred in failing to give the Sheffield instruction because the jury could have found that Ishimine's acts of pulling the CW from the car or dragging the CW up the stairs constituted "restraint," but if those acts caused the CW pain, they could have also served as the basis for the abuse of family or household member charge.  See HRS § 709-906 (2014 & Supp. 2015 & 2016) (criminalizing "physical abuse" and "harm" to a family or household member).  He argues that the jury could have also found that Ishimine's act of holding the CW and covering her mouth constituted "restraint," but if that act restricted the CW's breathing it could have also served as the basis for the felony abuse of family or household member charge. See HRS § 709-906(8) (2014 & Supp. 2015 & 2016) (punishing abuse of a family or household member as a class C felony where the defendant "intentionally or knowingly imped[es] the normal

15

breathing or circulation of the blood of the family or household member by applying pressure on the throat or neck. . . .") Ishimine argues that, pursuant to Sheffield, the jury could not rely on the restraint incidental to the intended infliction of bodily injury as the same restraint supporting the kidnapping charge.  Therefore, Ishimine argues, the circuit court plainly erred in not providing the jury with the Sheffield instruction.

Further, Ishimine maintains, the error was not harmless beyond a reasonable doubt, because the omission of a jury instruction on restraint diminished Ishimine's ability to present a complete defense against the kidnapping charge.  This was because he did not have the opportunity to argue to the jury that the restraint supporting the kidnapping charge had to be more than incidental to any restraint necessary to inflict the underlying (but uncharged) conduct of abuse of a family or household member.

**D.  Analysis**

    **1.   A Sheffield instruction was required**

Ishimine's arguments are persuasive.  We hold that the circuit court plainly erred by failing to provide the jury with an instruction on incidental restraint.  We also conclude that the error was not harmless beyond a reasonable doubt.  While we recognize the cogency of the State's arguments that Ishimine's act of restraint (namely, dragging the complaining witness up

16

the stairs and into the locked bedroom) could have been independently charged as kidnapping, could have injured the complaining witness, and could have facilitated abuse of the complaining witness behind closed doors, it is the finder of fact that ultimately determines whether the restraint Ishimine used was more than merely incidental to the dismissed and untried abuse of family or household member offenses. Further, an important fact remains: the State proceeded to trial on just the kidnapping charge after dismissing the underlying abuse of family or household member charges. As we alluded to in Sheffield, that kind of prosecutorial decision could be characterized as "abusive" and an "end run around the special doctrinal protections designed for uncompleted crimes." Sheffield, 146 Hawai'i at 58 n.11, 456 P.3d at 131 n.11.

We agree with Ishimine that the restraint present in this case (dragging the complaining witness from her car, up the stairs, and into a locked bedroom, then holding a hand over her mouth) likely provided the State with a basis for charging Ishimine with the three counts of Abuse of Family or Household Member. After dismissing those counts before trial, however, it was unjust for the State to rely on the conduct underlying those untried counts to serve as the basis for its kidnapping case. This is especially so when considering that conviction for Kidnapping as a Class A Felony carries with it a 20-year term of

17

imprisonment, and conviction for the Abuse of Family or Household Member counts carries with it sentences of imprisonment of one year for a misdemeanor conviction and five years for a Class C Felony conviction.  See HRS § 709-906 (5)(a)&(b) (2014 & Supp. 2015 & 2016) & 706-663 (2014 & Supp. 2016) (misdemeanor sentencing); HRS § 709-906(8) (2014 & Supp. 2015 & 2016) & 706-660(1)(b)&(2)(b) (2014 & Supp. 2016) (Class C felony sentencing).

Because the abuse of family or household member offenses were dismissed and untried, the jury could not have convicted Ishimine for "physical[ly] abus[ing] or harm[ing]" the complaining witness, as a misdemeanor, under HRS § 709-906 (2014 & Supp. 2015 & 2016), for his act of dragging the complaining witness from her car, up the stairs, and into a locked bedroom. Nor could the jury have convicted Ishimine of felony abuse of a family or household member for "intentionally or knowingly impeding the normal breathing or circulation of the blood of the family or household member by applying pressure on the throat or the neck. . . ."  HRS § 709-906(8)(2014 & Supp. 2015 & 2016).

Therefore, the jury chose in this case to convict Ishimine of kidnapping.  Under Sheffield, however, in order for Ishimine to have been convicted of kidnapping, the State needed to prove that the restraint Ishimine used was more than just the restraint incidental to committing the underlying and untried

18

abuse of family or household member offenses. Consequently, we hold that the circuit court plainly erred by failing to so instruct the jury. Further, such error was not harmless beyond a reasonable doubt, because there was a reasonable possibility that the absence of such an instruction contributed to Ishimine's conviction. Stated another way, when the jury is not made aware that more than just incidental restraint must support a kidnapping conviction, the "risk" of conviction based on an insufficient showing of restraint exists. Sheffield, 146 Hawai'i at 58, 456 P.3d at 131.

We express no opinion as to whether a jury could find Ishimine guilty of kidnapping on remand. As the State points out, there are cases in which "a short restraint in an area where the victim might suffocate or come to other bodily harm" has supported a kidnapping conviction. See Hernandez, 61 Haw. at 478, 605 P.2d at 77. The power to make this determination ultimately rests with the finder of fact, but only after being properly instructed on the nature of the restraint necessary to convict a defendant of kidnapping.

## 2. Response to dissent

The dissent asserts that this opinion "throws caution to the wind to override our adversarial system and address an issue Ishimine never raised." Dissenting Opinion at 3. According to the dissent, Ishimine was not without recourse because even if

19

his appellate counsel did not raise the failure to give a Sheffield instruction, Ishimine could file a Hawai'i Rules of Penal Procedure Rule 40 post-conviction petition.[7]  Dissenting Opinion at 6 n.3.

First, contrary to the dissent's assertion, exercise of plain error review does not override the adversarial process, even when we address an issue not raised by a defendant. Rather, plain error review is a historically well-recognized check on the adversarial process, necessary to correct obvious injustices.

The plain error doctrine has been recognized by the U.S. Supreme Court since at least 1896.  See Wiborg v. U.S., 163 U.S. 632, 658 (1896) ("[I]f a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it").  The doctrine has since developed throughout the country, with almost every state having adopted some version of the plain error standard of appellate review.  Tory A. Weigand, Esq., Raise or Lose: Appellate Discretion and

---

[7]     The dissent asserts Ishimine could assert ineffective assistance of counsel in such a petition.  Dissenting Opinion at 6 n.3.  The dissent also asserts that "[i]n holding the missing jury instruction impacted Ishimine's substantial rights, today's majority questionably condones appellate counsel's provision of what the majority renders ineffective assistance." Dissenting Opinion at 6 n.3.  This assertion is unfair to appellate counsel. We have never suggested that appellate counsel was ineffective in not raising this issue on appeal or on certiorari; Sheffield was decided after the appeal was filed.

Principled Decision-Making, 17 SUFFOLK J. TRIAL & APP. ADVOC. 179, 222 (2012).

Plain error review reflects the "careful balancing of [the court's] need to encourage all trial participants to seek a fair and accurate trial the first time around against [the court's] insistence that obvious injustice be promptly redressed." U.S. v. Frady, 456 U.S. 152, 163 (1982); see also Weigand, supra, at 180 ("The discretionary approach to new or unpreserved issues on appeal is the result of the collision between the principle of party presentation underlying the adversarial process and the role of the appellate court as both the guardian of a fair proceeding and final arbiter of applicable law.").

The plain error doctrine applies even when an appellate court takes notice of error not brought to its attention by the parties. The United States Supreme Court has long recognized its authority to take notice of plain error not raised by a defendant. See, e.g., United Brotherhood of Carpenters & Joiners of Am. v. United States, 330 U.S. 395, 412 (1947) ("We have the power to notice a 'plain error' though it is not assigned or specified."); accord, Silber v. United States, 370 U.S. 717, 718 (1962). See also, Greenlaw v. United States, 554 U.S. 237, 247 (2008) ("This Court has indeed noticed, and ordered correction of, plain errors not raised by defendants,

but we have done so only to benefit a defendant who had himself petitioned the Court for review on other grounds.").

Hence, Rule 24(1)(a) of the Rules of the Supreme Court of the United States (2019) clearly provides in part, "At its option, however, the Court may consider a plain error not among the questions presented but evident from the record and otherwise within its jurisdiction to decide."

This court has also historically exercised our authority to recognize plain errors not brought to our attention to redress obvious injustice.  See, e.g., Hernandez, 61 Haw. at 481, 605 P.2d at 79 (lack of sufficient evidence to support conviction for specific type of sexual abuse); State v. Grindles, 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989) (defendant required to put on evidence before conclusion of State's evidence); State v. Getz, 131 Hawai'i 19, 27, 313 P.3d 708, 716 (2013) (failure to issue specific unanimity instruction); State v. DeLeon, 131 Hawai'i 463, 485, 319 P.3d 382, 404 (2014) (preclusion of doctor's testimony regarding probable effects of cocaine on decedent).

The dissent cites to dicta in our cases saying "a party must look to [their] counsel for protection and bear the cost of counsel's mistakes."  State v. Kelekolio, 74 Haw. 479, 515, 849 P.2d 58, 75 (1993); State v. Fox, 70 Haw. 46, 55-56, 760 P.2d 670, 675-76 (1988).  The dissent fails to acknowledge, however,

22

that in those very cases, we exercised plain error review to correct obvious injustices. In Kelekolio, we noticed plain error due to the trial court's failure to conduct a competency hearing before complainant's testimony. 74 Haw. at 523-24, 849 P.2d at 78. In Fox, we noticed plain error due to the trial court's admission of evidence grounded on statements made in the course of plea discussions. 70 Haw. at 56, 760 P.2d at 676.

Thus, plain error review has long been exercised by courts in this country as a necessary tool to correct obvious injustices that otherwise occur in the adversarial system. Accordingly, Rule 52(b) of the Hawai'i Rules of Penal Procedure provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." And Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28 (b)(4)(D) provides in part:

> Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented. If an appellate court, when acting on a case on appeal, contemplates basing the disposition of the case wholly or in part upon an issue of plain error not raised by the parties through briefing, it shall not affirm, reverse, or vacate the case without allowing the parties the opportunity to brief the potential plain-error issue prior to disposition. . . .

The second sentence from HRAP Rule 28 (b)(4)(D) quoted above was added effective January 1, 2022.

Moreover, second, the dissent does not even discuss the fact that this court unanimously ordered supplemental briefing

on the issues pursuant to this recently-added language. Hence, both Ishimine and the State submitted supplemental briefing and argued their positions on the questions addressed.

Third, with respect to the dissent's allegedly available "recourse," Ishimine would not have been entitled to counsel if his conviction was affirmed by this court without addressing the failure to give a <u>Sheffield</u> instruction.  Thus, he may never have become aware of the issue.  Even if he did and he then filed a pro se Rule 40 petition in the circuit court, whether or not the circuit court found a colorable claim and appointed counsel, there would be a substantial delay before the issue ever reached this court.  Defendants should not have to languish before courts address whether their substantial rights have been violated.  Rather, fundamentally, this court has the jurisdiction, power, and obligation to "promot[e] justice in matters pending before it."[8]  Thus, contrary to the dissent's assertion, our "invocation of plain error jurisdiction" neither "constitutes judicial overreach" nor "substantially undermines our adversarial system."  Dissenting Opinion at 2.

The dissent also asserts that we "silently dismiss[] our precedent . . . for determining . . . whether the

---

[8]    We have repeatedly cited to HRS § 602-5(6) (2016), which provides this court with "jurisdiction and power[]" "[t]o . . . take such . . . steps as may be necessary to carry into full effect the powers which are or shall be given to it by law or for the promotion of justice in matters pending before it."

[instructional] defect was harmless beyond a reasonable doubt."
Dissenting Opinion at 1-2.  We disagree.  We have clearly held
that "an appellate court will reverse for plain error in jury
instructions where the error cannot be said to be harmless
beyond a reasonable doubt (*i.e.,* considering the record as a
whole, there is a reasonable possibility that the error
contributed to the defendant's conviction)."  State v. Nichols,
111 Hawai'i 327, 329, 141 P.3d 974, 976 (2006).  The dissent would
rule as a matter of law that the restraint exercised here was
more than incidental.  Dissenting Opinion at 8.  Although we
recognize the cogency of the State's arguments regarding the
three tests for incidental restraint, the finder of fact is the
ultimate arbiter of the degree of restraint Ishimine used
against the complaining witness.

Further, the dissent erroneously asserts that we "silently
dismiss[] our precedent identifying three tests for determining
whether the jury instruction was necessary. . . ."  Dissenting
Opinion at 1-2.  The dissent misunderstands the purpose of the
three tests.  The three tests assist the jury in understanding
whether the restraint used by the defendant could support a
kidnapping conviction because the restraint is more than just
incidental to the commission of some other crime.  See
Sheffield, 146 Hawai'i at 59, 456 P.3d at 132 ("The Trujillo
court noted that the majority rule among other jurisdictions is

that restraint or movement merely incidental to some other crime will not support a conviction for kidnapping. In these other jurisdictions, three formulations of the majority rule have emerged for determining whether a restraint or movement is "incidental" to another crime.) (citing Trujillo, 289 P.3d at 248). The three tests are not, as the dissent argues, used to "determin[e] whether the jury instruction was necessary." Dissenting Opinion at 2.

Hence, considering this record as a whole, there is a reasonable possibility the failure to give a Sheffield instruction contributed to the kidnapping conviction. In contrast with the dissent, "we are unwilling to speculate as to what the jury would have done had it been given a proper . . . instruction." See Nichols, 111 Hawai'i at 340, 141 P.3d at 987.

### V. Conclusion

The circuit court in this case plainly erred by failing to provide the jury with a Sheffield instruction. This error was not harmless beyond a reasonable doubt. Consequently, we vacate the ICA's April 15, 2020 judgment on appeal and remand this case to the circuit court for further proceedings consistent with this opinion.

Alen M. Kaneshiro                         /s/ Sabrina S. McKenna
for petitioner
                                          /s/ Michael D. Wilson
Richard B. Rost
for respondent                            /s/ Todd W. Eddins



26